**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**WILLIE WOOTEN, JR.,**

      **Plaintiff,**

**vs.**                        **Case No.  4:12-CV-606-CAS**

**CAROLYN W. COLVIN,
Acting Commissioner of Social Security,**

      **Defendant.**

_____/

**MEMORANDUM OPINION AND ORDER**

      This is a Social Security case referred to the undersigned United States

Magistrate Judge upon consent of the parties, doc. 8, and reference by Chief United

States District Judge M. Casey Rodgers.  Doc. 9.  *See* Fed. R. Civ. P. 73; 28 U.S.C.

§ 636(c).  After careful consideration of the entire Record, the Court affirms the decision

of the Commissioner.

**I.  Procedural History**

      On August 7, 2008, Plaintiff, Willie Wooten, Jr., filed an application for

Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act),

alleging disability beginning January 31, 2007, due to his mental condition and gout.

R. 23, 135-36, 158, 163.  (Citations to the Record shall be by the symbol "R." followed

by a page number that appears in the lower right corner.)

Plaintiff's application was denied initially on March 24, 2009, and upon

reconsideration on May 29, 2009.  R. 23, 77-83, 89-91.  On June 12, 2009, Plaintiff

requested a hearing.  R. 23, 92-93.  On October 20, 2010, in Tallahassee, Florida,

Plaintiff appeared and testified at a hearing conducted by Administrative Law Judge

(ALJ) Stephen C. Calvarese.  R. 23, 45-69.  Robert N. Strader, an impartial vocational

expert, testified during the hearing.  R. 23, 70-75, 126 (Resume).  Plaintiff was

represented by David Sullivan, an attorney.  R. 23, 43, 128.  At the hearing, Plaintiff

amended his alleged disability onset date to August 7, 2008.  R. 23, 41-42.

On November 12, 2010, the ALJ issued a decision and denied Plaintiff's

application for benefits concluding that Plaintiff was not disabled through November 12,

2010, the date of the ALJ's decision.  R. 33.  On July 27, 2012, the Appeals Council

denied Plaintiff's request for review of the ALJ's decision.  R.4-7, 15-16, 18.  In denying

relief the Appeals Council stated in part: "Also, the Appeals Council considered the fact

that since the date of the [ALJ's] decision, you were found to be under a disability

beginning December 1, 2010, based on the application(s) you filed on December 1,

2010; however, the Council found that this information does not warrant a change in the

[ALJ's] decision."  R. 4; Doc. 5.[1]

On October 12, 2012, the Appeals Council granted Plaintiff additional time to file

a civil action in the district court.  R. 1-3.  The ALJ's decision stands as the final decision

---

[1]  Plaintiff filed a one-page memorandum in this Court.  Doc. 15.  Plaintiff
attached several documents to this memorandum including a February 4, 2011,
determination from the Social Security Administration notifying Plaintiff that he was
found disabled as of December 1, 2010, and eligible for SSI.  He was advised of his
right to appeal, *see* pages 5 and 6.  There is no indication in this record that Plaintiff
appealed this determination.  *See* doc. 16 at n.3 (Commissioner's memorandum).
Therefore, the subsequent determination is not subject to review in this case.

of the Commissioner.  The relevant period in this case begins on August 7, 2008, the amended alleged onset date of disability, through November 12, 2010.

On November 20, 2012, Plaintiff, appearing pro se, filed a Complaint with the United States District Court seeking review of the ALJ's decision.  Doc. 1.  On December 7, 2012, Plaintiff filed what is docketed as his first amended complaint.  Doc. 5.  The parties filed memoranda of law, doc. 15, *see supra* n.1, and doc. 16, which have been considered.

## II. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  Moore, 405 F.3d at 1211.[2]

_____

[2]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" <u>Bloodsworth</u>, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. <u>Barnhart v. Walton</u>, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

---

weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**IV.  Legal Analysis**

**A.  The ALJ's Decision**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful employment since August 7, 2008, the date of the SSI application and the amended alleged onset date.  R. 25.  At step two, the ALJ found that Plaintiff had several severe impairments such as gouty arthritis; s/p left patella tendon rupture repair (8/10); major

depressive disorder with psychotic features; and DA&A (cocaine, marijuana, and alcohol). The ALJ stated that these impairments are considered severe because they cause more than minimal limitations on Plaintiff's ability to perform basic work activities. *Id.*

As noted, the ALJ determined that Plaintiff has a substance use disorder. R. 25. This finding is a material finding that permeates the ALJ's decision. R. 25-33. For example, the ALJ ultimately determined that "because the claimant would not be disabled if he stopped the substance use (20 CFR 416.920(f)), the claimant's substance use disorders is a contributing factor material to the determination of disability (20 CFR 416.935). Thus, the claimant has not been disabled within the meaning of the [Act] at any time from the date the application was files through the date of this decision. R. 33.

Regressing a bit, at step three, the ALJ made several findings:

3. The claimant's impairments, including the substance use disorders, meet sections 12.04 [Affective Disorders] and 12.09 [Substance Abuse Disorders] of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).[3]

. . . .

4. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

5. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the

---

3 The ALJ determined that the "paragraph A" and "paragraph B" criteria of these listings were satisfied and he stated: "Including the substance abuse disorders, the claimant has *moderate* restrictions in activities of daily living; *marked* difficulties in maintaining social functioning; *marked* difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation." R. 26 (emphasis added). (The "paragraph B" criteria are satisfied because Plaintiff has two marked limitations.) *Id.*

impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

R. 26.  Under Finding 5, the ALJ determined that if the Plaintiff "stopped the substance abuse, the remaining limitations would not meet or medically equal a listing criteria of listing 12.04" because then Plaintiff would have *mild* restrictions in activities of daily living; *moderate* difficulties in social functioning; *moderate* difficulties in regard to concentration, persistence or pace; and *no* episodes of decompensation.  *Id.*

Prior to step four, the ALJ determined Plaintiff's residual functional capacity (RFC).  R. 27.  The ALJ's RFC assessment follows:

> 6.  If the claimant <u>stopped the substance use</u>, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he would have moderate limitations in his ability to maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and set realistic goals or make plans independently of others.  However, he is able to understand and carry out simple and detailed tasks, and can focus for 2-hour periods; persist over a normal 8 hour/5 day task schedule with customary breaks; has adequate social skills to function in a task situation although he may need occasionally re-direction to cleanliness/hygiene; and needs assistance in developing task goals.  The claimant is able to learn and engage in simple, routine, repetitive tasks and perform on a sustained basis in a socially appropriate manner.

R. 27.  The ALJ discussed relevant evidence including Plaintiff's testimony, several consultative physical and mental examinations and medical record evaluations, and Plaintiff's examination and treatment at the Veterans Administration (VA) Clinic.  In particular, the ALJ discussed Plaintiff's treatment with Marie B. Go, M.D., Staff Psychiatrist at the VA Clinic, and her opinions regarding Plaintiff's diagnosis, prognosis, and ability to work.  R. 28-32.  The ALJ concluded the RFC discussion as follows:

If the claimant **stopped the substance use**, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Although the claimant has received various forms of treatment for the allegedly disabling symptoms, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. The claimant has been prescribed and takes appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms. The record also reveals that the claimant's allegedly disabling impairment(s) was present at approximately the same level of severity prior to the alleged onset date. The evidence of record shows that the claimant has been suffering from mental health problems since 2004; however, he continued to work without any significant problems. The fact that the impairment(s) did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work. Furthermore, the description of symptoms and limitations, which the claimant has provided throughout the record, has generally been inconsistent and unpersuasive. Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity. The Administrative Law Judge notes that the record contains an opinion from an examining physician, which supports the residual functional capacity reached in this decision. Furthermore, the residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also support a finding of 'not disabled.' Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions. These physicians concluded that the claimant could perform unskilled, medium work.

R. 32.

At step four, the ALJ determined that if Plaintiff stopped the substance use, he

"would be able to perform past relevant work as a construction worker and

groundskeeper.  This work does not require the performance of work-related activities precluded by the [RFC] the claimant would have if he stopped the substance use (20 CFR 416.965)."  R. 32 (Finding 7).

Ultimately, the ALJ concluded that Plaintiff was not disabled:

8.  Because the claimant would not be disabled if he stopped the substance use (20 CFR 416.920(f)), the claimant's substance use disorders is a contributing factor material to the determination of disability (20 CFR 416.935).  Thus, the claimant has not been disabled within the meaning of the [Act] at any time from the date the application was filed through the date of this decision.

R. 33.

**B.  Substantial evidence supports the ALJ's determination that Plaintiff has not been disabled at any time from the date the application was filed on August 7, 2008, through the date of the ALJ's decision entered on November 12, 2010.**

In his memorandum, doc. 15, Plaintiff does not directly address the ALJ's decision.  Doc. 15.  Rather, Plaintiff argues that he should have been found to be disabled as of "August 12, 2008 and not December, 2010."  *Id.*  He further argues that his "health did not improve to allow [him] to seek gainful employment it only got became worser."  *Id.*  Plaintiff requests retroactive benefits for the period at issue in this case -- August 7, 2008, through November 12, 2010.  *Id.*

1.

As noted above, Plaintiff was awarded SSI effective December 1, 2010.  *See supra* n.1.  Decisions of the ALJ are reviewed to determine whether the claimant is entitled to benefits during a specific period of time, which period is prior to the date of the ALJ's decision, here November 12, 2010.  The relevant period for this Court's consideration is the time-period *prior* to the ALJ's decision.  *See* Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999) (per curiam); Cassidy v. Comm'r of Soc. Sec., 383 F.

App'x 840, 842 (11th Cir. 2010) (unpublished); Anderson v. Astrue, Case No. 5:06cv192/SPM/EMT, 2007 U.S. Dist. LEXIS 96621, at *31-32 (N.D. Fla. Nov. 9, 2007). Moreover, sentence six of 42 U.S.C. § 405(g) provides that the district court may remand the case to the Commissioner for "additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See* Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 653 (6th Cir. 2009); *see also* Bradley v. Bowen, 809 F.2d 1054, 1057-58 (5th Cir. 1987). Plaintiff has not provided the required good cause. As a result, the subsequent award is not relevant. Also, the Appeals Council considered this issue, but "found that this information does not warrant a change in the [ALJ's] decision." R. 4. Remand for re-consideration of the subsequent award of benefits is not required.

2.

Plaintiff filed a first amended complaint, doc. 5, and claimed he is entitled to SSI because of his psychotic disorder, NOS. *Id.* He attached to the first amended complaint a copy of the decision of the Appeals Council of July 27, 2012, and three "to whom it may concern" letters written by Plaintiff's treating psychiatrist, Dr. Go. *Id.* (May 21, 2010, October 20, 2009, and September 4, 2008).[4] These letters generally state that they were written at the request of Plaintiff and that Plaintiff was applying for Social Security benefits. *See* doc 5; R. 346, 585, 588, 755. In the first three letters mentioned above, Dr. Go states that she has been treating Plaintiff since December 3, 2004; his prognosis was poor in 2009 and 2010 and guarded in 2008; his diagnosis was psychotic

---

[4] Dr. Go wrote a fourth letter on April 8, 2009. R. 373. His GAF score was 55. R. 375.

disorder, NOS; he has poor concentration and stress coping skills; he is generally

unemployable; and his Global Assessment of Functioning (GAF) scores were 50 in

2009 and 2010.[5]  *Id.*  In light of his first amended complaint, it appears Plaintiff argues

that the ALJ should have given the opinions of Dr. Go significant weight.

   The opinion of the claimant's treating physician must be accorded considerable

weight by the Commissioner unless good cause is shown to the contrary.  Crawford v.

Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Lewis v. Callahan, 125

F.3d 1436, 1440 (11th Cir.1997).  This is so because treating physicians "are likely to be

the medical professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical evidence that

---

   [5]  The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000) includes the GAF Scale that is primarily used by mental health practitioners.  The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure."  *See* DSM-IV-TR 32-34.  The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale.  *Id.  See* Nichols v. Astrue, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing the GAF scale).  A GAF scale rating of 31-40 is indicative of some impairment in realty testing or communication or major impairment in several areas, such as work or school family relations, judgment, thinking, or mood.  DSM-IV-TR at 34.  A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning.  *Id.*  A GAF scale rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*  A GAF scale rating of 61 to 70 indicates some *mild* symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships.  *Id.*  The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"  Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(d)(2). Conversely, "[a] statement by a medical source that [a claimant is] "disabled" or "unable to work" does not mean that [the claimant is] disabled." 20 C.F.R. § 416.927(d)(1).

An ALJ has good cause not to afford substantial or considerable weight to a treating physician's opinion "where (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records." Caldwell v. Barnhart, 261 F. App'x 188, 191 (11th Cir. 2008) (unpublished). In this case, good cause exists because, as the ALJ explained, Dr. Go's opinions were conclusory, did not reveal significant clinical abnormalities expected of a disabled patient, were not supported by objective medical findings, and were inconsistent with the evidence. R. 29, 31. Substantial evidence supports this rationale.[6]

Dr. Go's three letters made no reference to the treatment records, objective medical tests, or Plaintiff's symptoms. Dr. Go provided no opinion on the precise extent of Plaintiff's functional limitations in the workplace setting such as mild, moderate, or severe limitations on concentration, social functioning, or daily activities. R. 346, 585, 588, 755.

---

[6]  The ALJ also explained his rationale, which is supported by substantial evidence, for affording no weight to the opinion of consulting examining psychologist Michael G. Railey, Sr., Ph.D. R. 30. The ALJ noted that the low IQ scores assessed by Dr. Railey, R. 432-35 (Exhibit 7F), were inconsistent with Plaintiff's education and past work experience and there was no mention of low average intelligence functioning in any treatment notes. *Id.* Plaintiff does not challenge this analysis nor has Plaintiff challenged the ALJs credibility findings. R. 27-33.

Dr. Go opined that Plaintiff was unemployable and unable to hold job; however, this did not amount to a medical opinion and instead was a conclusion reserved to the Commissioner and thus entitled to no deference or significant weight. 20 C.F.R. § 416.927(d)(1); <u>Forsyth v. Comm'r of Soc. Sec.</u>, 503 F. App'x 892, 894 (11th Cir. 2013) (unpublished).

Further, the ALJ was required to consider the extent of Plaintiff's limitations and whether Plaintiff would be disabled, absent his substance use, an issue that Dr. Go did not address. R. 346, 585, 588, 755. The Act precludes an award of SSI where alcoholism or drug addiction was a contributing factor material to the determination of disability. *See* 42 U.S.C. § 1382c(a)(3)(J) ("Notwithstanding subparagraph (A), an individual shall not be considered to be disabled for purposes of this title [42 USCS §§ 1381 et seq.] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.") (SSI); 42 U.S.C. § 432(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.") (DIB). The Commissioner must consider whether a claimant's "current physical and mental limitations, which we based our current disability determination, would remain if [the claimant] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(2); <u>Pearson v. Astrue</u>, 271 F. App'x 979, 981 (11th Cir. 2008) (unpublished) (holding ALJ properly determined claimant's alcoholism was contributing factor material to disability determination).

Dr. Go's opinions do not address the effect of Plaintiff's alcohol or drug use on his functioning, R. 346, 585, 588, 755, although her treatment notes routinely mention Plaintiff's reported drinking of alcohol. *See, e.g.*, R. 300, 308, 317, 338, 513, 520, 574. Plaintiff testified that he is a different person when he drinks and when he is drinking he gets "carried away sometime," such as he will "[s]tart arguing with his girlfriend or friend," but when he does not drink, he is a "normal person." R. 65-66. In fairness to Plaintiff, Plaintiff's reported amounts of drinking alcohol to Dr. Go and others vary throughout his treatment history. *See, e.g.*, R. 300 (March 14, 2008--2 to 3 beers a day); 308 (November 8, 2007--about a quart of beer a day); 317 (July 7, 2007--1 beer a day).

On April 8, 2009, Plaintiff was counseled to discontinue alcohol use and "he said he will try." He reported drinking one beer a day. On this date, Dr. Go wrote one of her "to whom it may concern" letters, which is more cryptic than the others, although Dr. Go noted Plaintiff's prognosis remained guarded. R. 373-74. On October 20, 2009, Plaintiff reported drinking one to two beers daily. He was hoping to quit nicotine and alcohol "altogether someday." R. 756; *see* R. 737 (January 21, 2010--Plaintiff cut back to one to two beers daily). By October 20, 2009, according to Dr. Go, Plaintiff's prognosis was poor and his GAF score was 50. R. 585.

In May 21, 2010, treatment notes, and in her May 21, 2010, letter, Dr. Go did not mention Plaintiff's arrest for cocaine possession in and around March 2010, although he testified he only held it and did not use it. R. 28, 69, 588, 728-31. As of May 21, 2010, Dr. Go indicated in treatment notes that Plaintiff "is continuing to cut back on alcohol use." R. 729. The alcohol screen indicates that Plaintiff reported having had a drink

with alcohol monthly or less during the past year; he consumed five or six drinks

containing alcohol when he was drinking in the past year; and had six or more drinks on

one occasion in the past year on a less than monthly basis.  R. 732-33.  As of August

25, 2010, it is noted that Plaintiff drank a beer a few times a week and denied any

relapses on cocaine.  R. 608; *see* R. 265 (Dr. Holloman (January 28, 2008)--drinks

three beers a day and a history of going to rehabilitation for ethanol abuse).

The ALJ properly relied on evidence contrary to Dr. Go's opinions, particularly

the opinion of Lawrence V. Annis, Ph.D., who performed a consultative psychological

evaluation on January 8, 2009.  R. 29, 349-52.  Plaintiff reported to Dr. Annis that his

medications were helpful, R. 349, and he last worked three days before cleaning up a

church.  R. 350.  Under the category of substance abuse history, Dr. Annis noted that

"[d]rug use and problems with alcohol are denied.  He says he last drank alcohol on

Monday (three days ago)."  R. 349; *see* R. 29.  Dr. Annis's examination established

Plaintiff's attention was normal and his thought expression was rational and coherent.

R. 350.  Plaintiff was limited in social interactions, but would be able to interact with

people he did not know to a limited degree.  R. 351.  Dr. Annis opined that Plaintiff

would not do well in occupations requiring frequent, protracted, or demanding social

interaction and would require more encouragement than most people in encountering

work difficulties.  He should avoid employment at occupations requiring technical

precision, driving and operating machinery, and avoid contact with dangerous

substances.  *Id.*  This opinion is consistent with the state agency physicians, who found

that Plaintiff retained the capacity to perform unskilled work.  R. 32, 452 (Dr. Cormier, March 20, 2009), 469 (Richard K. Lyon, Ph.D., May 22, 2009).[7]

Moreover, Plaintiff's treatment records, including Dr. Go's treatment notes, are more consistent with the findings of Drs. Annis, Lyons, and Cormier than Dr. Go's letters.  In each of Dr. Go's approximately thirteen examinations over a period of nearly four years, with little variance, she found Plaintiff was alert and oriented, with an organized thought process, intact judgment and insight, and no suicidal/homicidal ideations, delusions or hallucinations.  *See, e.g.*, R. 287-88, 301, 309, 317, 332, 337, 375, 403, 410, 552, 610, 731, 739, 758.  These examination findings were the same in Plaintiff's visits with Dr. Go both before, and after, he stopped working in his construction clean-up job in and around January 2007.  *Id.*  (Plaintiff was reported working in construction on or about October 16, 2006, "not the framing part but he sorts out the leftover wood in different piles."  R. 336.)  When Dr. Go first opined that Plaintiff could not work on September 4, 2008, Dr. Go found that Plaintiff was alert and oriented, with an organized thought process, intact judgment and insight, and no suicidal/homicidal ideations, delusions or hallucinations.  R. 410.  Dr. Go also assessed a GAF of 55 on that day, indicating only moderate symptoms.  *Id.*  In the visits both before and after the September 4, 2008, visit, Dr. Go assessed Plaintiff's GAF as 65, indicating only mild symptoms.  R. 287 (June 4, 2008), 403 (October 2, 2008); *see*

---

[7]  The ALJ discusses the January 28, 2008, consultative physical examination performed by Carol Holloman, D.O., at the request of the Social Security Administration. R. 28, 265-70 (Exhibit 2F).  Dr. Holloman's assessment reiterated Plaintiff's past medical history namely gout, depressive disorder with psychotic features, ethanolim, tobaccoism, and head injury.  R. 265.  The results of the physical examination were generally normal.  R. 28, 266-67.

R. 363, 497.  Overall, in 10 out of Dr. Go's approximately 13 examinations, she assessed a GAF score of 55 or 65, indicating moderate or mild symptoms.  R. 288, 301, 309, 317, 332, 337, 375, 403, 410, 552, 610; *see* R. 363, 497 (summaries of eight GAF scores); *see also supra* n.4.  Only in October of 2009, January of 2010, and May of 2010, did Dr. Go assess a GAF score of 50.  R. 731, 739, 758.  Significantly, this period starts and ends, with the other two of Dr. Go's letters in support of Plaintiff's application for SSI.  R. 585, 588.  After this period, Plaintiff's GAF score went back up to 55. R. 608, 610.  Even though Dr. Go lowered Plaintiff's GAF score for these three visits, she still made similar examination findings as all of the other visits--Plaintiff was alert and oriented, with an organized thought process, intact judgment and insight, and no suicidal/homicidal ideations, delusions, or hallucinations.  R. 731, 739, 758.  Therefore, substantial evidence supports the ALJ's finding that Dr. Go's conclusory opinions were not supported by her treatment records.  R. 29-31.

In addition, Plaintiff's treatment records demonstrate a positive response to conservative treatment and that his symptoms were controlled with medication. Plaintiff's treatment was intermittent and conservative.  He received medication and presented to Dr. Go for treatment several times a year, *see, e.g.*, R. 28-31, 287, 301, 309, 317, 331, 337, 375, 403, 410, 608, 731, 739, 758, although he received on-going evaluations and treatment from medical personnel at the VA Clinic other than Dr. Go. *See, e.g.*, R. 272-79, 354-61, 491-99.  However, he responded well to the treatment he received.  Plaintiff experienced hallucinations in June of 2008 when he was not consistently taking his medication, but thereafter reported no hallucinations.  R. 28-31. Plaintiff acknowledged that his medication was helpful, and in October of 2008 he

improved with a medication change.  R. 28, 30, 402.  In his last visit before the ALJ

hearing, Dr. Go decided to decrease his medication, and besides his physical problems

stemming from his basketball injury, Dr. Go said he was "doing fine otherwise" and

"coping with his physical limitations."  R. 608.  Therefore, Plaintiff's response to

conservative treatment supports the ALJ's assessment of the medical source opinions.

*See* Milner v. Barnhart, 275 F. App'x 947, 948 (11th Cir. 2008) (unpublished) (finding

ALJ decision supported by substantial evidence where plaintiff's condition responded to

treatment); Freeman v. Barnhart, 220 F. App'x 957, 961 (11th Cir. 2007) (unpublished)

(finding evidence of improvement with treatment demonstrated depression was not

severe).

The ALJ also noted that Plaintiff's daily activities were inconsistent with

completely debilitating functional limitations.  Prior to injuring his leg/knee playing

basketball in and around August 2010, R. 608, he used to play basketball "all the time."

R. 49-50, 57.  He did "okay" around other people, was able to grocery shop by himself,

went to church two times a month and visited friends.  R. 28, 58, 174-76.  During the

day, he cleaned up, swept, washed clothes, and rode his bicycle "all the time."  R. 28,

58, 174.  He regularly went to the community recreation center and the park, he went

fishing, and walked his dog.  R. 58, 174, 176, 208-09.

Moreover, Plaintiff's work activity prior to, and during, the period of alleged

disability demonstrates that his mental condition did not prevent him from performing his

past relevant work. The ALJ noted that Plaintiff had been experiencing mental health

difficulties since 2004, and managed to work without significant problems.  R. 32.  The

ALJ reasoned that the fact Plaintiff was able to work despite his impairments previously,

suggested that his impairments did not prevent him from working during the time period relevant to the ALJ's decision. *Id.*

Plaintiff stopped working as a construction laborer in and around January of 2007, not due to his mental condition, but because he was "laid off because work was slow." R. 163-64. *See, e.g.*, Pendlebury v. Colvin, 1:12cv104-CAS, 2013 U.S. Dist. LEXIS 52462, at *35 (N.D. Fla. Apr. 11, 2013) ("Plaintiff did not stop working in October 2007 because of his allegedly disabling back impairment. Rather, Plaintiff stated that he was laid-off from his job."). Thereafter, during the period of alleged disability, Plaintiff continued to work at times. R. 28. Plaintiff testified that as of the date of his hearing before the ALJ, he had been out of work for six weeks and that was following his basketball injury. *Id.* Prior to that, he performed odd jobs such as cleaning pools, helping with things around the house, mowing the church grass, and washing cars. R. 28, 49-50, 208. When his work washing cars slowed down, he did other work. R. 50. Plaintiff's work during the period of alleged disability contributes to the substantial evidence demonstrating he was able to perform some work existing in the national economy. 20 C.F.R. § 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

In summary, the ALJ considered the relevant evidence in the record, including the treatment notes and opinions of Dr. Go, Plaintiff's main treating physician from a mental status viewpoint. Dr. Go's opinions were considered in light of other evidence of record. Under the circumstances of this case, the ALJ did not err in giving her opinions "little weight." R. 29, 31. Substantial evidence supports the ALJ's determination that if Plaintiff "stopped the substance use," Plaintiff "would be able to perform past relevant

work" and that "[t]his work does not require the performance of work-related activities precluded by the [RFC]."  R. 32.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence and the ALJ correctly applied the law.  Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **AFFIRMED.**  The Clerk shall enter **JUDGMENT** for Defendant.

IN CHAMBERS at Tallahassee, Florida, on December 16, 2013.


<u>s/ Charles A. Stampelos</u>
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**